*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ARTHUR J. KINNAN, | ) | |
| | ) | Supreme Court No. S-15437 |
| Appellant, | ) | |
| | ) | Superior Court No. 1SI-12-00216 CI |
| v. | ) | |
| | ) | O P I N I O N |
| SITKA COUNSELING, MICHAEL | ) | |
| McGUIRE, & ERIC SKOUSEN, | ) | No. 6998 – April 17, 2015 |
| | ) | |
| Appellees. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Sitka, David V. George, Judge.

Appearances: Arthur J. Kinnan, pro se, Sitka, Appellant. Brian E. Hanson, Brian E. Hanson, LLC, Sitka, for Appellees.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.     INTRODUCTION

Arthur J. Kinnan lived in a three-bedroom residence as part of a substance abuse treatment program operated by Sitka Counseling. Funding for that program ended, and Sitka Counseling informed Kinnan that he would be required to vacate the residence. Kinnan filed suit against Sitka Counseling and two of its staff members, alleging several torts based on the defendants' conduct when removing him from the premises, violations

of Alaska's Landlord Tenant Act, and deprivation of constitutional rights under 42 U.S.C. § 1983. After a bench trial, the superior court ruled in favor of Sitka Counseling on all claims.

Kinnan argues that the superior court wrongfully denied a continuance to allow him to seek counsel, wrongfully excluded the testimony of a late-disclosed witness and two affidavits, and improperly facilitated questioning regarding Kinnan's mental disability. We conclude that any error resulting from the exclusion of Kinnan's witness was harmless and we see no abuse of discretion in the superior court's denial of Kinnan's continuance, its exclusion of the affidavits as hearsay, or its consideration of Kinnan's mental disability. And we also reject Kinnan's argument that the superior court's adverse rulings created an appearance of judicial bias.

## II.    FACTS AND PROCEEDINGS

Sitka Counseling operated a substance abuse treatment program in a three-bedroom residence. Arthur J. Kinnan lived in the residence as part of this program, but Sitka Counseling terminated the program in September 2011, after program funding ended. On August 31, 2012, Sitka Counseling provided Kinnan written notice that he had ten days to vacate the residence. Kinnan vacated the residence on September 14, after visits to the residence from Michael McGuire, Sitka Counseling's executive director, and Eric Skousen, another staff member.

Kinnan then filed suit against Sitka Counseling, McGuire, and Skousen (collectively Sitka Counseling), alleging that McGuire and Skousen committed assault and battery in attempting to remove him from the residence. In particular Kinnan alleged that on September 10, 2012, McGuire entered the residence uninvited and stated "in an angry voice" while standing "very close" to Kinnan that because he had resigned from Sitka Counseling, "he was not bound by the ususal constraints of his professional relationship with . . . Kinnan and . . . intended to engage in physical combat." Kinnan

further alleged that on September 14, Skousen "barged into" the residence and "took hold of the front of [Kinnan's] shirt, lifted [Kinnan] off the ground, shook [Kinnan] and told [Kinnan] that if [Kinnan] didn't leave the house immediately he would throw him to the floor, handcuff [Kinnan] and drag [Kinnan] out into the street and hurt him."

In addition to the assault and battery claims, Kinnan alleged negligent hiring and supervision; trespass to real estate; trespass to personal property; violations of the Landlord Tenant Act[1]; intentional infliction of emotional distress; violation of constitutional rights under 42 U.S.C. § 1983; and conspiracy to violate constitutional rights under 42 U.S.C. § 1983.

According to Sitka Counseling, Kinnan subsequently returned to the residence. Sitka Counseling allowed him to remain there but filed a forcible entry and detainer (FED) counterclaim,[2] seeking to regain possession of the residence.

A scheduling conference was held on February 5, 2013. Both Kinnan and his attorney, James McGowan, were present. The superior court then entered a pretrial order setting the trial for the week of October 28, 2013, and establishing various pretrial deadlines, including due dates for Alaska Civil Rule 26 disclosures and witness lists.

A hearing on the FED action was held on February 22, 2013. At the outset of the hearing, McGowan informed the superior court that Kinnan wished to "fire" him, and the court allowed McGowan to withdraw as counsel. Kinnan proceeded without counsel from this point forward. Following the FED hearing, the court ruled that Kinnan's occupancy of the residence was not covered by the Landlord Tenant Act and ordered Kinnan to peacefully vacate the residence by February 28, 2013.

---

[1]     AS 34.03.010-.380.

[2]     *See* AS 09.45.070(a) ("When a forcible entry is made upon a premises, or when an entry is made in a peaceable manner and the possession is held by force, the person entitled to the premises may maintain an action to recover the possession.").

As for Kinnan's suit, Sitka Counseling never received any initial disclosures from Kinnan nor any responses to its discovery requests in the months that followed.[3] Nor does it appear that Kinnan took any action or submitted any filings in his case until October 10, 2013, when he filed a witness list that was eight days late and included only his witnesses' names and addresses. On October 15 Kinnan filed a request for a continuance, citing his difficulty in retaining another attorney. He requested that the trial date be postponed until November 18, 2013.

A pretrial conference was held on October 17, 2013. The judge denied Kinnan's request for continuance and explained that the trial would be held as scheduled on October 28, 2013. The court also partially granted Sitka Counseling's request to exclude the witnesses on Kinnan's untimely witness list. The judge explained that Kinnan would be allowed to call himself, the other parties, and impeachment witnesses.

A bench trial on Kinnan's complaint was held on October 28, 2013. The superior court granted a directed verdict in Sitka Counseling's favor on Kinnan's Landlord Tenant Act claim, his trespass to personal property claim, and his § 1983 claims. At the conclusion of the trial, the court ruled that Kinnan failed to carry his burden of proof on his remaining claims: assault, battery, trespass to real property, negligent supervision and hiring, and intentional infliction of emotional distress. The court then dismissed Kinnan's complaint with prejudice. Kinnan appeals pro se, based on 1) the denial of his requested continuance, 2) the exclusion of his eyewitness, 3) the exclusion of two affidavits as hearsay, 4) inquiries into the nature of his mental disability, and 5) the judge's alleged appearance of bias.

---

[3] Under the pretrial order, initial Civil Rule 26 disclosures were due March 15, 2013, and discovery was to be closed by September 27, 2013.

## III. STANDARD OF REVIEW

"We will not disturb a trial court's refusal to grant a continuance unless an abuse of discretion is demonstrated. An abuse of discretion exists when a party has been deprived of a substantial right or seriously prejudiced by the [trial] court's ruling."[4] "We consider the particular facts and circumstances of each individual case to determine whether the denial was so unreasonable or so prejudicial as to amount to an abuse of discretion."[5] "[D]ecisions about the admissibility of evidence" are reviewed for abuse of discretion.[6] "We review de novo the question of whether a judge appears biased, which is assessed under an objective standard."[7]

## IV. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion By Denying Kinnan's Request For Continuance.

"A continuance for the purpose of finding and obtaining counsel requires a showing of diligence."[8] "There is no general right to counsel in civil cases under the

---

[4]     *Greenway v. Heathcott*, 294 P.3d 1056, 1062 (Alaska 2013) (quoting *Azimi v. Johns*, 254 P.3d 1054, 1059 (Alaska 2011)) (internal quotation marks omitted).

[5]     *Id.* (quoting *Bigley v. Alaska Psychiatric Inst.*, 208 P.3d 168, 183 (Alaska 2009)) (internal quotation marks omitted).

[6]     *Shooshanian v. Dire*, 237 P.3d 618, 622 (Alaska 2010).

[7]     *Sagers v. Sackinger*, 318 P.3d 860, 863 (Alaska 2014); *see also Phillips v. State*, 271 P.3d 457, 459 (Alaska App. 2012) ("On the separate issue of whether, given the circumstances, reasonable people would question the judge's ability to be fair, the proper standard of review is de novo — because reasonable appearance of bias is assessed under an objective standard." (emphasis and internal quotation marks omitted)).

[8]     *Greenway*, 294 P.3d at 1067.

United States or Alaska Constitutions.  Further, many litigants successfully represent themselves in civil litigation."[9]

Kinnan filed his motion for continuance on October 15, 2013, less than two weeks before his case was set for trial.  In this motion Kinnan claimed his original attorney had charged him $5,000 for each telephonic appearance, "effectively wiping out [his] savings."  Kinnan contended that his "first choice" attorney was unavailable and that "there are fewer and fewer lawyers of experience and integrity," but did not otherwise detail any of his efforts to retain new counsel.

At the pretrial conference, Kinnan was unable to further articulate a justification for his requested continuance.  The judge noted that Kinnan had "presumably" been seeking counsel since his original attorney had withdrawn and had not shown how his efforts would be successful given more time.  Accordingly, the judge denied Kinnan's request for continuance.  At trial Kinnan sought reconsideration of that decision, but the judge reiterated the reasoning behind his original ruling and concluded there was no rationale for reconsideration.

On appeal Kinnan claims he "lives on meager funds," his prior attorney exhausted his savings, and "[t]o retain an experienced, interested, available law firm, willing to work on a contingency basis without retainer is a time consuming endeavor."  But even assuming these claims are true, difficulties in retaining counsel cannot alone justify a continuance, absent a "showing of diligence."[10]  Although Kinnan claimed at trial that he had obtained the name of a law firm to which he could try to "sell [his] case," he offered no other evidence of his efforts to retain counsel.

---

[9]     *Azimi*, 254 P.3d at 1061.

[10]    *Greenway*, 294 P.3d at 1067.

Kinnan also cites his "severe mental disability" and appears to argue that this favored granting a continuance. But even considering the "particular facts and circumstances" of Kinnan's situation, denying a continuance where Kinnan's attorney had withdrawn nearly eight months prior was not "unreasonable" or "prejudicial."[11] The superior court therefore did not abuse it discretion in denying Kinnan's requested continuance.[12]

## B. Any Error Resulting From The Exclusion Of Daniel Klannot, Jr.'s Testimony Was Harmless.

Kinnan appears to argue that he should have been allowed to call Daniel Klannot, Jr. as an "eye witness" at trial, despite his failure to include Klannot on a timely submitted witness list. We conclude that although the judge should have considered alternative sanctions for Kinnan's noncompliance with the pretrial order, any error resulting from the exclusion of Klannot's testimony was harmless.[13]

Under the pretrial order entered in February 2013, the parties were required to submit preliminary witness lists in May and final witness lists by October 2. Neither Kinnan nor Sitka Counseling timely submitted a preliminary list. Sitka Counseling

---

[11] *See id.* at 1062 (citation and internal quotation marks omitted).

[12] Kinnan also appears to argue that it was unfair not to grant him a continuance because Sitka Counseling received a routine extension of time to file its appellee's brief. But different standards apply to a continuance as opposed to a routine extension of time under Alaska Appellate Rule 503.5. *Compare Wagner v. Wagner*, 299 P.3d 170, 175 (Alaska 2013) ("[A] motion for continuance should be denied absent a weighty reason to the contrary." (citation and internal quotation marks omitted)), *with* Alaska R. App. P. 503.5(b), (c) (requiring "a showing of diligence and substantial need" only for a *non*-routine motion).

[13] *See Hill v. Giani*, 296 P.3d 14, 22 n.23 (Alaska 2013) ("We must disregard harmless errors that have no substantial effect on the rights of the parties or on the outcome of the case.").

timely submitted a final witness list, noting that because no preliminary witness list had been submitted, Sitka Counseling would rely on the defendants' testimony alone. On October 10, 2013, Kinnan filed his first witness list, which included Klannot's name and address.

At the pretrial conference, Sitka Counseling sought to exclude all witnesses besides the parties. The judge asked Kinnan if he could offer any excuse for his failure to timely submit a witness list. In response Kinnan stated only that his prior attorney had been "ineffective" and that he was merely a lay person. The judge then ruled that Kinnan would be allowed to call only himself, the defendants, and impeachment witnesses.

"If a party or party's attorney fails to obey a scheduling or pretrial order, . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D)."[14] As this court has noted, the exclusion of a witness "falls squarely within this language."[15] "The trial court has broad discretion to choose an appropriate sanction,"[16] but in fashioning such a sanction, the court must consider:

> (A) the nature of the violation, including the willfulness of the conduct and the materiality of the information that the party failed to disclose;
>
> (B) the prejudice to the opposing party;
>
> (C) the relationship between the information the party failed to disclose and the proposed sanction;

---

[14] Alaska R. Civ. P. 16(f).

[15] *Sykes v. Melba Creek Mining, Inc.*, 952 P.2d 1164, 1169 (Alaska 1998); *see also* Alaska R. Civ. P. 37(b)(2)(B) (providing for "[a]n order . . . prohibiting [the disobedient] party from introducing designated matters in evidence").

[16] *Cartee v. Cartee*, 239 P.3d 707, 720 (Alaska 2010) (citation and internal quotation marks omitted).

(D) whether a lesser sanction would adequately protect the opposing party and deter other discovery violations; and

(E) other factors deemed appropriate by the court or required by law.[17]

Kinnan indisputably violated the pretrial order by failing to disclose Klannot as a witness until October 10, 2013 — more than four months after preliminary witness lists were due. But in fashioning an appropriate remedy, the superior court was required to consider the above factors.[18] And in light of Kinnan's pro se status and his alleged mental disability, consideration of a "lesser sanction" would have been particularly appropriate under the circumstances of this case.[19] Accordingly, the superior court should have considered alternative options, such as ordering a deposition to clarify the content of Klannot's testimony prior to trial.[20]

But "[w]hen the trial court has erroneously excluded evidence, a party must show that the error was harmful or prejudicial before we will reverse the trial court."[21] "The test for determining whether an error was harmless is whether on the whole record

---

[17] Alaska R. Civ. P. 37(b)(3); *see also Cartee*, 239 P.3d at 721 (quoting Alaska R. Civ. P. 37(b)(3)); *Sowinski v. Walker*, 198 P.3d 1134, 1158 (Alaska 2008) ("In fashioning . . . remedies [for discovery order violations], Rule 37 commands courts to consider the nature and severity of the violation, the prejudice to the opposing party, and any other factors it deems appropriate.").

[18] *Cartee*, 239 P.3d at 721 (quoting Alaska R. Civ. P. 37(b)(3)).

[19] Alaska R. Civ. P. 37(b)(3)(D).

[20] *Cf. Lewis v. Lewis*, 785 P.2d 550, 557 (Alaska 1990) (upholding the exclusion of testimony as a sanction for an untimely filed witness list where the trial court first provided an opportunity to depose the witness); *Bertram v. Harris*, 423 P.2d 909, 915-17 (Alaska 1967) (same).

[21] *Barton v. N. Slope Borough Sch. Dist.*, 268 P.3d 346, 353 (Alaska 2012).

the error would have had a substantial influence on the [trier of fact]."[22]   Here it is somewhat difficult to discern the likely content of Klannot's testimony, as Kinnan did not describe the subject of Klannot's testimony in his late-filed witness list or at the pretrial conference, and merely characterizes Klannot as an "eye witness" in his briefing to this court.   At trial Kinnan claimed that Klannot would "affirm that [they] were threatened," though he did not specify by whom or on what occasion.

McGuire's testimony, however, suggests Klannot was initially present for the incident on September 10, 2012, which formed part of the basis for Kinnan's assault claim.  Specifically McGuire testified that Klannot was sitting on the couch with Kinnan when McGuire arrived at the residence to verify that Kinnan had vacated the premises. But according to McGuire, Klannot "got up and left because he knew that [McGuire and another individual] were there to ask [Kinnan] to leave."  Kinnan did not refute this testimony, and it is therefore unclear how much of the September 10 incident Klannot actually witnessed.  Nor is there is anything in the record to suggest Klannot was present for Kinnan's interaction with Skousen on September 14, 2012, which formed the basis for Kinnan's battery claim.

Moreover, Kinnan offered no information as to how Klannot's testimony would have differed from McGuire's own recounting of events.   In particular McGuire admitted to making a variant of the comment that Kinnan described as threatening. According to Kinnan's testimony at trial, McGuire told Kinnan "that he was quitting his job [with Sitka Counseling] but if he ever saw [Kinnan] on the street, it would be *mano a mano*."  According to McGuire, he said to Kinnan, "You know . . . , there was a time when we could settle this man to man."  But McGuire also testified that he was 69 years

---

[22]      *Id.* (quoting *Noffke v. Perez*, 178 P.3d 1141, 1147 (Alaska 2008)) (internal quotation marks omitted).

old, not "in fighting shape," and recovering from a heart bypass. In the absence of any explanation on appeal of how Klannot's testimony would have differed from this account, we cannot conclude that Klannot's testimony would have had a "substantial influence" on the court's decision.[23]

### C. The Superior Court Did Not Abuse Its Discretion By Excluding Affidavits From Myron Fribush And Michael Boyd As Hearsay.

At trial Kinnan sought to introduce two affidavits into evidence, both of which the superior court excluded as inadmissible hearsay. The first affidavit was from Dr. Myron A. Fribush, who claimed to be Kinnan's primary physician. In relevant part, Dr. Fribush attested that forcing Kinnan to vacate the residence had "rendered [Kinnan] homeless and deprived [Kinnan] of services under the Community Support Program." Dr. Fribush also observed that "Kinnan has a well established mental health history."

The second affidavit was from Michael J. Boyd, "past director" of Sitka Counseling. Boyd claimed that Sitka Counseling obtained the residence through a grant from the Alaska Mental Health Trust Authority requiring that the property "be used solely for supportive housing for the chronically mentally [ill]" and not for "general agency purposes."

Based on Sitka Counseling's objections, the superior court excluded both affidavits as inadmissible hearsay. As Sitka Counseling correctly argues, affidavits are "quintessentially hearsay and suspect evidence."[24] Neither witness was available for

---

[23]     *See Barton*, 268 P.3d at 353 (citation and internal quotation marks omitted).

[24]     *See Greenway v. Heathcott*, 294 P.3d 1056, 1064-65 (Alaska 2013) (upholding a superior court's exclusion of affidavits as hearsay "even absent an objection" by the opposing party).

cross-examination.[25]  Kinnan presents no legal theory as to why the affidavits would have fallen under an exception to the hearsay rule, arguing only that the judge's characterization of the affidavits as hearsay was "false."  Accordingly, it was not an abuse of discretion to exclude the Fribush and Boyd affidavits as hearsay.

**D.    It Was Not Plain Error To Allow And Facilitate Cross-Examination Regarding Kinnan's Mental Disability.**

Kinnan appears to argue that the superior court should have prohibited Sitka Counseling's attorney from cross-examining him about the details of his mental disability.  Kinnan similarly takes issue with questions the judge asked during cross-examination.

In his complaint Kinnan stated that he had "been diagnosed with a mental disability."  At trial Kinnan also described himself as "100 percent mentally disabled [due to a] . . . traumatic [brain] injury."  During cross-examination Sitka Counseling's attorney, Brian Hanson, asked Kinnan to state his specific diagnosis, but after sharing information about who made the diagnosis, Kinnan responded, "It's 100 percent disability.  Other than that, it's none of your businesses."  At Hanson's request the judge intervened and asked Kinnan to explain his diagnosis, which Kinnan did without objection.

Hanson then resumed questioning, asking Kinnan whether his mental disability created delusions or impaired his memory, which Kinnan denied.  Hanson asked what effect the mental disability had, and Kinnan responded that he "refuse[d] to answer."  The judge again intervened, inquiring about the potential impacts of Kinnan's mental disability, without objection.

---

[25]    Dr. Fribush appeared later in the trial, but only as an impeachment witness.

"We review a superior court's evidentiary rulings for abuse of discretion."[26] But "[w]e will not consider issues on appeal that were not raised below absent plain error, which exists 'where an obvious mistake has been made which creates a high likelihood that injustice has resulted.' "[27] Aside from his initial refusal to answer Hanson's questions, Kinnan raised no objection to the inquiries regarding his mental disability, nor did Kinnan argue that the effects of his mental disability were irrelevant. Accordingly, we review this issue only for plain error, and none is apparent from this record.

Notably, Kinnan himself referenced his mental disability both in his complaint and again at trial. In particular Kinnan raised the issue of his mental disability in seeking a continuance, contending that he does not "think as fast as other people." Given Kinnan's own invocation of the issue, there is not a "a high likelihood that injustice . . . resulted"[28] when the superior court required Kinnan to clarify his diagnosis and answer questions regarding the effects of his disability.

Nor was the probative value of testimony regarding Kinnan's mental disability "outweighed by the danger of unfair prejudice."[29] As the superior court noted, inquiries into Kinnan's mental disability were aimed at assessing his "ability to perceive, recall, recollect, and relate." Both McGuire and Skousen contradicted Kinnan's testimony regarding his claims of assault, battery, and intentional infliction of emotional

---

[26] *Janes v. Alaska Railbelt Marine, LLC*, 309 P.3d 867, 875 (Alaska 2013).

[27] *David S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 270 P.3d 767, 774 (Alaska 2012) (quoting *D.J. v. P.C.*, 36 P.3d 663, 667-68 (Alaska 2001)).

[28] *See id.*

[29] *See* Alaska R. Evid. 403.

distress. Accordingly, evidence regarding Kinnan's memory and perception was highly probative, and it was not plain error to allow and even facilitate cross-examination on the topic of Kinnan's mental disability.

### E.    Neither The Superior Court Judge's Rulings Nor His Conduct Created An Appearance Of Bias.

As we noted in *Greenway v. Heathcott*, "[a] judge must recuse himself or herself if there is bias.  If the appearance of bias is involved, we have held that the judge should give weight to preserving the appearance of impartiality."[30]  But we have also held "that even incorrect rulings against a party do not show bias in and of themselves."[31]

Kinnan appears to argue that the superior court judge's rulings created an appearance of impropriety or bias.  In particular he asserts that the judge's bias was "exposed" through the denial of Kinnan's request for a continuance and the exclusion of the Fribush and Boyd affidavits as inadmissible hearsay.  We rejected a similar argument in *Greenway*, holding that neither the denial of a continuance nor the exclusion of affidavits as hearsay demonstrated an appearance of bias.[32]  As we have previously reminded pro se litigants, "judicial bias should not be inferred merely from adverse rulings."[33]  And as in *Greenway*, nothing in the judge's demeanor or tone in denying the

---

[30]    294 P.3d 1056, 1063 (Alaska 2013) (footnote omitted).

[31]    *Id.*

[32]    *Id.* at 1064-68.

[33]    *Khalsa v. Chose*, 261 P.3d 367, 376 (Alaska 2011) (citation and internal quotation marks omitted).

continuance or excluding the affidavits "objectively permit[s] a conclusion that the court was biased, or appeared to be biased."[34]

Kinnan similarly contends that the judge viewed the defendants as "above reproach" and appears to argue that the judge exhibited bias by crediting the defendants' testimony regarding Kinnan's assault and battery claim.[35] But the judge's determinations regarding witness credibility similarly fail to support a claim of bias.[36]

Kinnan also argues that the denial of his requested continuance forced him to appear pro se and that the judge's attempts to explain the trial process were insufficient. But Kinnan had no right to counsel,[37] and the record shows that the judge met his obligation to "inform a pro se litigant of the proper procedure for the action he

---

[34]    294 P.3d at 1064.

[35]    In this portion of his opening brief, Kinnan also makes a number of allegations that could be interpreted as an argument that the superior court erred in making certain factual findings. But Kinnan does not expressly make this argument, and his factual allegations are without citation to the record. Accordingly, Kinnan waived any argument regarding the superior court's factual findings through inadequate briefing. *See A.H. v. W.P.*, 896 P.2d 240, 243 (Alaska 1995) (noting in the context of a pro se appellant that "superficial briefing and the lack of citations to any authority constitutes abandonment of the point on appeal").

[36]    *See Khalsa*, 261 P.3d at 376; *see also Wasserman v. Bartholomew*, 38 P.3d 1162, 1170-71 (Alaska 2002) ("Mere evidence that a judge has exercised his judicial discretion in a particular way is not sufficient to require disqualification." (alteration, citation, and internal quotation marks omitted)).

[37]    *See Azimi v. Johns*, 254 P.3d 1054, 1061 & n.19 (Alaska 2011) ("There is no general right to counsel in civil cases" . . . , and "[t]he provision of publicly-funded counsel in some child custody, parental termination, and involuntary commitment cases is a notable exception to this rule.").

or she is obviously attempting to accomplish."[38]  For instance, the judge provided an overview of the relevant trial procedures and explained the basis for his evidentiary rulings.  The judge also assisted Kinnan with the presentation of his case by inquiring about each cause of action listed in Kinnan's complaint, and prompting Kinnan to offer any testimony he had on each claim.

Kinnan also argues that the judge's conduct at trial created an appearance of bias.  In particular Kinnan contends that the judge "openly mocked plaintiff's ignorance and inability."  But this claim is without citation to the record, and is contradicted by both the judge's respectful tone and his attempts to explain the relevant procedures.

Similarly Kinnan argues that the judge assumed the role of Sitka Counseling's attorney by questioning Kinnan about his mental disability.  But the superior court "may examine any witness" under Alaska Evidence Rule 614(b), and there was nothing in the judge's tone or demeanor during this exchange that exhibited bias against Kinnan.  Kinnan further argues that the judge had a duty to intervene when Kinnan was "badgered, belittled, and deliberately confused" by Sitka Counseling's attorney, but a review of the record reveals no conduct that would have necessitated the judge's intervention.[39]

Finally Kinnan argues that the judge "confessed to pre-judgment" by noting that "he already made a ruling on . . . the ownership of the [residence]."  But there is no

---

[38]     *See Wagner v. Wagner*, 299 P.3d 170, 174 (Alaska 2013) (citation and internal quotation marks omitted).

[39]     Under the Alaska Code of Judicial Conduct, "[a] judge shall be patient, dignified, and courteous to litigants" and "shall take reasonable steps to maintain and ensure similar conduct from lawyers . . . ."  Alaska Code of Jud. Conduct 3(B)(4).

evidence that the superior court "pre-judge[d]" this issue.[40]  To the contrary, in responding to one of Sitka Counseling's evidentiary objections earlier in the trial, the judge expressly noted that evidence regarding the ownership of the residence could be relevant to Kinnan's claims.  For the reasons above, neither the judge's rulings nor his conduct created an appearance of impropriety or bias.

## V.   CONCLUSION

We therefore AFFIRM the superior court's judgment.

---

[40]    In the comments Kinnan cites, the judge merely noted that he had previously issued an order upholding Sitka Counseling's "possession of the property."