NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| ANTONNETTE N., | ) | |
| | ) | Supreme Court No. S-18694 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-07699 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| TOREY M., | ) | AND JUDGMENT* |
| | ) | |
| Appellee. | ) | No. 2037 – July 10, 2024 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Yvonne Lamoureux, Judge.

Appearances: Antonnette N., pro se, Anchorage, Appellant. Torey M., pro se, Maricopa, Arizona, Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I. INTRODUCTION

The superior court denied a mother's request to modify a child custody order awarding the father primary physical custody. The mother appeals, arguing that the court erred in concluding that there was no substantial change in circumstances since its last custody order. She also contends that the court was biased against her. We affirm the court's decision.

---

\* Entered under Alaska Appellate Rule 214.

## II.   FACTS AND PROCEEDINGS

### A.   Facts

Antonnette N. and Torey M. are the parents of their nine-year-old daughter, M.M.[1]  The superior court awarded the parties shared physical custody and joint legal custody of their daughter in 2016.  After Torey moved to Nevada in 2020, the court modified its prior order to award him primary physical custody with visitation to Antonnette during holidays and school breaks.

### B.   Proceedings

In July 2022 Antonnette moved to modify custody, seeking primary physical custody and sole legal custody.  She argued that Torey was not providing proper supervision, appropriate medical care, or a stable home.  In response, Torey argued there had been no substantial change in circumstances.

At a subsequent evidentiary hearing, Antonnette testified that she believed Torey was failing to adequately supervise M.M.  Antonnette described the discovery of videos of a sexual nature on M.M.'s phone that had been recorded at Torey's house.  Antonnette stated her belief that Torey was not administering M.M.'s prescribed eczema medication and that Torey's housing situation was unstable.  Antonnette also called two witnesses, her adult daughter and a high school friend.  Torey testified that he maintained a stable residence, he was taking M.M. to medical appointments and attending to her medical needs, and he routinely checked her phone for inappropriate content.

The court denied Antonnette's motion to modify custody.  It first found that no substantial change in circumstances had occurred.  It then turned to the child's best interests, concluding that, even had there been a substantial change in

---

[1]     We use the child's initials, as well as initials in lieu of the parties' last names, to protect the family's privacy.

circumstances, continuing the current custody arrangement would be in the child's best interests. Antonnette moved for reconsideration, which was denied.

Antonnette appeals.

## III. STANDARD OF REVIEW

Trial courts have "broad discretion in child custody matters."[2] This broad discretion extends to the superior court's "determination whether, following an evidentiary hearing, the moving party has proven a substantial change in circumstances."[3] We will set aside the superior court's custody determination only if we are "convinced that the record shows an abuse of discretion or if controlling factual findings are clearly erroneous."[4] An abuse of discretion occurs when the superior court considers improper factors, fails to consider statutorily mandated factors, or gives improper weight to certain factors.[5] Factual findings are clearly erroneous when, based on the entire record, we are left with a definite and firm conviction that a mistake has been made.[6]

## IV. DISCUSSION

Modification of a custody order is a two-step process: First, "the parent seeking modification must establish a significant change in circumstances affecting the children's best interests; only then is a best interests analysis performed."[7] Antonnette

---

**2** *Farrell v. Farrell*, 819 P.2d 896, 898 (Alaska 1991).

**3** *Rainer v. Poole*, 510 P.3d 476, 481 (Alaska 2022) (quoting *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016)).

**4** *Farrell*, 819 P.2d at 898.

**5** *Id.*

**6** *Ebertz v. Ebertz*, 113 P.3d 643, 646 (Alaska 2005).

**7** *Abby D. v. Sue Y.*, 378 P.3d 388, 394 (Alaska 2016) (internal quotation marks omitted) (quoting *Hunter v. Conwell*, 276 P.3d 413, 419 (Alaska 2012)); *see also* AS 25.20.110(a) (permitting court to modify custody order upon finding "a change in

argues the superior court abused its discretion by concluding that there had been no substantial change in circumstances, that it erred in making best interests findings, and that the judge should have been disqualified for bias.[8]

## A. The Superior Court Did Not Abuse Its Discretion In Concluding There Was No Substantial Change In Circumstances.

The party seeking to modify a child custody order bears the burden of proving both that circumstances have changed substantially since the most recent custody order was entered and that these changed circumstances, "considered in conjunction with other relevant facts bearing upon the child's best interests, warrant modification of the existing custody decree."[9] In order to "overcome our deep reluctance to shuttle children back and forth between parents," a change in circumstances generally must affect the child's welfare and reflect more than the mere passage of time.[10] What constitutes a substantial change in circumstances is a "heavily fact-intensive" determination.[11]

Generally, determining whether a change in circumstances has occurred requires comparing "current circumstances to a 'baseline' at the time of the most recent

---

circumstances requires the modification"). Although *Abby D.* only used the term "significant," we have stated that the "change in circumstance must be significant or substantial" and use the terms interchangeably here. *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000).

[8] Antonnette also points to what she claims were false statements made by Torey at the 2020 modification hearing. But she does not explain how those statements are relevant to the 2023 hearing, and offers no reason to believe the superior court relied on these statements in fashioning the order on appeal here. We therefore do not address this argument.

[9] *Lashbrook v. Lashbrook*, 957 P.2d 326, 329 (Alaska 1998) (quoting *A.H. v. W.P.*, 896 P.2d 240, 244 (Alaska 1995)).

[10] *Rainer v. Poole*, 510 P.3d 476, 481 (Alaska 2022) (quoting *Collier v. Harris*, 377 P.3d 15, 22 (Alaska 2016)).

[11] *Collier*, 377 P.3d at 22.

custody order."[12] "If current circumstances are similar to those at the time of the most recent custody order, no substantial change has occurred and the court must decline the modification request."[13]

Antonnette raises three possible substantial changes of circumstances since the September 2020 custody order.[14] She points to an incident in which videos of a sexual nature were discovered on M.M.'s phone, disputes over the child's medical care, and Torey's changes in residence. The superior court found that none of these events, either individually or in the aggregate,[15] amounted to a substantial change. Antonnette renews her arguments on appeal but does not show that the superior court abused its discretion.

### 1. Videos on M.M.'s phone

Antonnette contends the superior court erred by concluding that the discovery of videos of a sexual nature on M.M.'s phone was not a substantial change in circumstances. The evidence in the record pertaining to the videos is minimal. A police report states that the videos depict M.M. and a female friend of similar age "exposing

---

[12] *Rainer*, 510 P.3d at 482.

[13] *Id.*

[14] Both Antonnette and Torey also discuss events that occurred before the September 2020 custody determination and after the court's February 2023 order denying Antonnette's motion. Events that occurred prior to the most recent custody order generally cannot establish a substantial change in circumstances. *See id.* While we have relaxed this rule in cases where allegations of domestic violence were "not adequately addressed at the initial custody determination or subsequent proceedings," *McAlpine v. Pacarro*, 262 P.3d 622, 626 (Alaska 2011), Antonnette's allegations of domestic violence were adequately addressed in the initial custody determination. We do not consider the parties' assertions about events occurring after the issuance of the order on appeal because those assertions were not presented to the superior court. *See* Alaska R. App. P. 210(a).

[15] *See Collier*, 377 P.3d at 22 (explaining courts must consider changed circumstances in aggregate).

themselves." Torey testified that he was "extremely concerned" to learn about the videos and responded by reaching out to the other child's mother, increasing his supervision of his daughter, informing her physician, and taking her to weekly counseling visits.

The court approvingly noted that Torey treated the discovery of the videos seriously and took reasonable steps in response. The court found that the two children were "being secretive" when they recorded the videos and that the existence of the videos did not suggest Torey was inadequately supervising M.M. Antonnette argues that this finding was biased in favor of Torey, but it is the superior court's responsibility to judge the credibility of witnesses.[16] The court did not clearly err by crediting Torey's testimony and did not abuse its discretion by concluding that the discovery of these videos did not amount to a substantial change in circumstances.

### 2.    Medical care

Antonnette also raises a variety of concerns related to the child's medical care, including Torey's alleged failure to administer a prescribed eczema medication and his opposition to certain vaccinations.[17] The superior court found that Torey had adequately provided for the child's medical needs. The court's finding is supported by the record.

The dispute over the eczema medication appears to stem from a miscommunication about the form of the medication. Antonnette testified that Torey

---

[16]    *Mallory D. v. Malcom D.*, 290 P.3d 1194, 1200 (Alaska 2012); *see also Curry v. Tucker*, 616 P.2d 8, 12 n.3 (Alaska 1980) (explaining deference is warranted because superior court "saw the witnesses testify, heard the inflection of their voices and observed their relative candor in answering questions").

[17]    Antonnette also alleges that Torey failed to treat M.M.'s vaginitis or vulvitis. But she does not explain how Torey's care was inadequate. This argument is therefore waived. *See Casciola v. F.S. Air Serv., Inc.*, 120 P.3d 1059, 1062 (Alaska 2005) ("We do not consider arguments that are inadequately briefed.").

was failing to pick up the child's eczema medication and had told her that Medicaid did not cover it. Torey testified that Medicaid did not cover the medication as an oil, but did cover it as an ointment and that he was applying the ointment "all the time," along with coconut oil and other moisturizers. The court credited Torey's testimony and found that Torey had been "applying cream or ointment to address [M.M.'s] eczema." Antonnette argues that the court failed to recognize that Torey's conduct amounted to medical neglect, but we will not second-guess the court's factual findings when, as here, those findings required weighing the credibility of the witnesses.[18]

Antonnette also raises concerns regarding Torey's decision to decline recommended vaccinations for M.M. The superior court found that, at the time of the hearing in February 2023, "it was unclear if there was a dispute" regarding vaccinations. The record supports this finding. At the hearing, after the court asked the parties to confer and make a decision on vaccinations, Antonnette testified that the parties had initially reached an agreement that would let Torey make decisions about vaccines, but that she was concerned Torey may object to certain vaccines she supported. The court noted that, in the future, either parent could move to modify joint legal custody as to vaccinations if there was, in fact, a dispute. The court did not abuse its discretion by determining that the concerns over M.M.'s vaccination status did not amount to a substantial change in circumstances.

### 3. Changes in residence

Antonnette points to Torey's changes in residence, suggesting that these relocations disrupted M.M.'s education and sense of stability. Antonnette's argument is very broad: She looks at every time Torey has moved, including several moves that predated the September 2020 custody order and at least one that occurred after the superior court entered the order now on appeal. But determining whether there has been

---

[18]     *See Mallory D.*, 290 P.3d at 1200.

a substantial change in circumstances requires comparing current circumstances to those existing at the time of the most recent custody order.[19]  At the time of the September 2020 custody order, Torey was living in Las Vegas.  At the time of the February 2023 hearing, he was living at a different Las Vegas residence.  In the interim, his family lived with his wife's father for a few months.  These moves are the only ones relevant to the custody order.

Antonnette points out that these moves led to several changes in M.M.'s schooling — from home school to elementary school, and then to another elementary school — which Antonnette argues negatively affected M.M.'s academic performance.  But the superior court found that Torey has been providing for M.M.'s educational needs, including by enrolling her in an afterschool program and assisting her with her school assignments.  And there is no evidence that Torey's move interfered with the custodial schedule.[20]  The superior court did not abuse its discretion by determining that Torey's move to a new residence within the same city, and the resulting change in elementary school for M.M., did not amount to a substantial change in circumstances.

**B.     The Superior Court Did Not Err In Making Best Interests Findings.**

After finding that there had been no substantial change in circumstances, the superior court made explicit findings on all of the statutory best interests factors and held that, even if there had been a substantial change in circumstances, they would weigh in favor of maintaining the existing custody arrangement.[21]  Antonnette challenges the court's findings on several of these factors on appeal.  She also suggests it was improper for the court to make best interests findings in the alternative.

---

[19]     *Rainer*, 510 P.3d at 482.

[20]     *See Judd v. Burns*, 397 P.3d 331, 341 & n.35 (Alaska 2017) (explaining move may warrant modifying custody order when it interferes with custody exchanges); *Long v. Long*, 816 P.2d 145, 153 (Alaska 1991).

[21]     *See* AS 25.24.150(c) (defining best interests factors).

As explained above, modifying custody is a two-step process that first requires the parent seeking modification establish a substantial change in circumstances.[22]  *Only if* the parent makes this threshold showing is the court required to determine whether the proposed custody modification is in the best interests of the child.[23]  The superior court here, having determined that there had been no substantial change in circumstances, was not obligated to consider the best interests factors.  And because we find no error in the court's decision on the threshold issue of a change in circumstances, we are not required to review its best interests determination.

Antonnette mistakenly interprets the superior court's findings as a categorical statement that "no circumstance would ever warrant a change in child custody."  On the contrary, these findings show that the court took the time to consider Antonnette's best interests arguments even though it was not required to do so.  In the course of making the best interests findings, the court thoroughly considered and addressed all of Antonnette's concerns about the custody arrangement, including those that did not suggest circumstances had substantially changed.  The court's findings reflect a careful review of each party's evidence and arguments, and its analysis of the factors was proper, supported by the record, and well within its discretion.  Nothing in its findings suggests that the court would not fairly and impartially consider any future motion by Antonnette, nor does its order limit Antonnette's ability to file such a motion should there be a substantial change of circumstances in the future.  The court did not err in making best interests findings.

---

[22]  *Abby D. v. Sue Y.*, 378 P.3d 388, 394 (Alaska 2016).

[23]  *Id.*

**C.      Antonnette Did Not Show That The Superior Court Was Biased.**

Finally, Antonnette argues that the judge was biased against her.[24]  She alleges that this bias violated her constitutional right to due process, as well as the Code of Judicial Conduct.  The primary evidence she points to in support of her claim of bias is the court's explanation that it was making the best interests findings in the alternative.  She also alleges that the court showed bias by finding that Torey had adequately supervised their daughter and by concluding that there had not been a substantial change in circumstances.

We have "repeatedly held that a party must demonstrate that the court formed an unfavorable opinion of the party from extrajudicial information and that bias cannot 'be inferred merely from adverse rulings.' "[25]  A limited exception exists when a judicial officer "hears, learns, or does something intrajudicially so prejudicial that further participation would be unfair."[26]

As we explained above, the superior court's findings were proper and did not foreclose any future motion to modify custody.  The court made factual findings, supported by the record, that explain how it would have ruled had Antonnette shown a substantial change in circumstances, not how it would rule on a new motion in the future.  The court's ruling gives us no reason to doubt its impartiality, and the record

---

[24]      Although Antonnette did not raise this claim in the superior court, we have permitted unrepresented appellants to raise claims of judicial bias for the first time on appeal.  *See, e.g.*, *Mengisteab v. Oates*, 425 P.3d 80, 90 (Alaska 2018).

[25]      *Downs v. Downs*, 440 P.3d 294, 299-300 (Alaska 2019) (footnote omitted) (quoting *Kinnan v. Sitka Counseling*, 349 P.3d 153, 160 (Alaska 2015)).

[26]      *Id.* at 300 (quoting *Brown v. State*, 414 P.3d 660, 661 n.3 (Alaska 2018) (Winfree, J., concurring in part and dissenting in part)).

indicates the court dealt fairly and courteously with both parties. Antonnette has not shown that the court was biased against her.[27]

## V.    CONCLUSION

We AFFIRM the superior court's decision.

---

[27]    *See Williams v. Williams*, 252 P.3d 998, 1010 (Alaska 2011) ("Forming an opinion from available evidence does not constitute personal bias.").