NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| RENA M. DALMAN, | ) | |
| | ) | Supreme Court No. S-19218 |
| Appellant, | ) | |
| | ) | Superior Court No. 1JU-19-00633 CI |
| v. | ) | |
| | ) | <u>MEMORANDUM OPINION</u> |
| ANTHONY M. COLLADO, | ) | <u>AND JUDGMENT</u>* |
| | ) | |
| Appellee. | ) | No. 2127 – January 14, 2026 |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Juneau, Larry R. Woolford, Judge.

Appearances: Roberta C. Erwin, Palmier & Erwin, LLC, Anchorage, for Appellant. D. Patrick Phillip, Carlson Law Group, Anchorage, for Appellee.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I. INTRODUCTION

In this appeal a mother challenges the superior court's decision to modify custody so that her child spends time with the child's father at his home outside Alaska. Although the child had not spent much time with her father in recent years, the court found that the father had reasonably exercised his visitation in light of extenuating circumstances and that it would be in the child's best interests to deepen their

---

\* Entered under Alaska Appellate Rule 214.

relationship. On appeal the mother argues that there was no substantial change in circumstances, that the modified custody order is not in the child's best interests, and that the court abused its discretion by ordering the parties to use in-network medical providers. Seeing no reversible error in any of the challenged factual findings and legal rulings, we affirm the superior court's orders.

## II. FACTS AND PROCEEDINGS

Anthony Collado and Rena Dalman were married in 2013. They have one child, who was born in 2016.

Anthony and Rena petitioned for the dissolution of their marriage in 2019. They agreed that Rena would have legal and physical custody of the child but that Anthony could visit "whenever he wants with at least 1 week notice." They also agreed to split the child's reasonable health care expenses not covered by insurance. The superior court dissolved the marriage and granted Rena legal and physical custody of the child. Anthony moved out of state as part of his active duty with the Coast Guard while Rena remained in Alaska with the child.

In December 2023 Anthony filed a motion to modify child custody, support, and visitation. He requested joint legal custody and increased visitation, including visitation at his new home in Mississippi. He asserted that he had a new position with the Coast Guard. Unlike his previous position, which required unexpected and lengthy periods of travel, his new position entailed working regular hours near his home. He argued that these developments constituted a substantial change in circumstances and that modification of the custody order was in the child's best interests.[1] Rena opposed modification.

---

[1] *See* AS 25.20.110(a) (allowing custody modification "if the court determines that a change in circumstances requires the modification of the award and the modification is in the best interests of the child").

Anthony filed a proposed parenting plan related to his motion to modify custody, visitation, and child support. He proposed shared legal custody. He requested that Rena maintain primary physical custody but that he have visitation with the child at his home during her summer breaks, spring breaks, and alternating winter breaks. He requested a week of visitation with the child in Alaska each October. As to health insurance, he proposed that he maintain the child's coverage through Tricare.[2] The proposal stated that "[i]n the event that medical expenses for the child exceed the coverage provided by the health insurance, both parents shall equally share the uncovered portion of such expenses. This includes any deductible amounts, co-insurance, or expenses not covered by the insurance policy." The court issued an order for a hearing on the motion to modify.

In February 2024 Anthony moved for an order that the child be allowed to visit him in Mississippi during the upcoming school spring break. Rena opposed Anthony's motion and filed a cross motion asking the court to order that the visit occur in Alaska. The superior court granted Anthony's motion, and the child traveled to Mississippi for a week-long visit with Anthony.

In May 2024 the superior court held a two-day hearing on the motion to modify. The court heard testimony from Anthony, Anthony's fiancée, Rena, Rena's mother, Rena's partner, and the child's counselor. Much of the testimony focused on the spring break visit and the child's behavior and emotional state following the visit.

The superior court granted Anthony's motion to modify custody, support, and visitation. The court noted that at the time of dissolution the parties contemplated that a change in physical custody could be warranted once the child began attending school. Because the child had reached that point, and because Anthony's new job

---

[2]     Tricare is the uniformed services health insurance program available to members of the Coast Guard and their families.

allowed him to provide stable and consistent care for her, the court found a substantial change in circumstances justifying a change in custody.

The court found that it would be in the child's best interests to spend more time with Anthony, including at his home in Mississippi. Weighing the statutory factors relevant to the child's best interests,[3] the court found they did not strongly favor either parent, but they did support awarding Anthony more visitation time. The court found that the child's spring break visit with Anthony had been a positive experience overall and that the child was resilient. Tacitly recognizing that the child had spent most of her time in Rena's care, the court found that a structured routine providing summer visitation in Mississippi and alternating holidays could provide stability for the child while maximizing relational stability with both parents. The court found the child too young to form a cogent preference regarding custody. Finally, the court determined that Anthony and Rena had the ability to cooperate and communicate about the child. Therefore, the court determined that Anthony and Rena should have joint legal custody.

The court ordered that Rena have primary physical custody during the school year but granted Anthony visitation during summer break. The court ordered a transition period over the course of three summers: the child would spend 4 weeks with Anthony in Mississippi in 2024; 6 weeks there in 2025; and a full summer from two weeks after the end of the school year to one week before the start of the following school year in 2026 and beyond. The order further provided for spring break visitation with Anthony in Mississippi, alternating holiday visits, a week of visitation during October in Alaska for Anthony, and a week of visitation during the summer in Mississippi for Rena.

The custody order also addressed the child's health insurance. The court ordered that Anthony maintain health insurance coverage for the child under Tricare

---

[3]     *See* AS 25.24.150(c) (listing factors court must consider to determine child's best interests in custody disputes).

and required that the parties use in-network healthcare providers when possible. If an in-network provider is "not available for a specific medical issue," the order requires that the parties "negotiate in good faith to determine a suitable out-of-network provider and shall equally split the costs for that treatment."

Rena moved for reconsideration. The record does not contain an order responding to this motion; it appears to have been denied as a matter of law.[4]

Rena appeals.

## III. DISCUSSION

### A. We Affirm The Superior Court's Custody Modification Order.

#### 1. The superior court did not abuse its discretion by finding a substantial change in circumstances.

Rena challenges the superior court's finding that there had been a substantial change in circumstances warranting modification of the existing custody order. We see no abuse of discretion in the court's finding.

Modification of a child custody order is a two-step process: "the parent seeking modification must establish a significant change in circumstances affecting the child's best interests; only if the parent makes this showing does the court proceed to determine whether modification is in the best interests of the child."[5] A change in circumstances must "affect[] the child[]'s welfare and 'reflect more than mere passage of time' " to "overcome our deep reluctance to shuttle children back and forth between parents."[6]

---

**4** Alaska R. Civ. P. 77(k)(4) ("If the motion for reconsideration has not been ruled upon by the court within 30 days from the date of the filing of the motion, or within 30 days of the date of filing of a response requested by the court, whichever is later, the motion shall be taken as denied.").

**5** *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016) (quoting *Hunter v. Conwell*, 219 P.3d 191, 196 (Alaska 2009)).

**6** *Hope P. v. Flynn G.*, 355 P.3d 559, 565 (Alaska 2015) (citation modified) (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 381 (Alaska 1998)).

"We review a trial court's child custody modification decision deferentially, reversing the decision only when the lower court abused its discretion or when its controlling findings of fact were clearly erroneous."[7]  "The court's broad discretion extends to its determination whether, following an evidentiary hearing, the moving party has proven a substantial change in circumstances, meaning one that affects the child's welfare."[8]  "When reviewing whether a trial court was justified in finding a change in circumstances, we do not parse each alleged factual assertion of change, but instead look to see whether the circumstances in the aggregate establish a change of circumstances."[9]

The court's finding of a substantial change was reasonable in light of changes in Anthony's ability to care for the child and the child's ability to travel.  First, the court found that Anthony's previous job "limit[ed] his ability to provide stable and consistent care for [the child]" because it "necessitated frequent and sudden travel." But Anthony's new job in Mississippi is close to his home, allows him to telework two days per week, and "offers greater stability and predictability" than his previous role. The court reasoned that unlike his previous job, Anthony's new position would "allow[] for increased time with [the child]" and would "enhanc[e] his presence and involvement in [her] daily life."  Rena does not challenge the superior court's findings about Anthony's new job.

Second, the court recognized that while the child was two years old when the parties' marriage was dissolved, she is now school-aged and better able to travel to visit her father.  Her young age at the time of dissolution made it "impractical to undergo

---

[7]     *Rainer v. Poole*, 510 P.3d 476, 481 (Alaska 2022) (quoting *Collier*, 377 P.3d at 20).

[8]     *Id.* (quoting *Collier*, 377 P.3d at 20).

[9]     *Heather W. v. Rudy R.*, 274 P.3d 478, 482 (Alaska 2012) (holding that superior court did not abuse discretion by considering all circumstances raised in case when determining substantial change in circumstances had occurred).

frequent cross-country travel or be separated from [her mother] for extended periods." The court acknowledged that the parties had "specifically contemplated" a change in circumstances occurring when the child reached school age and could travel more easily.

Rena does not seem to dispute these findings, but rather seems to suggest that there was no substantial change in circumstances because Anthony had not reasonably exercised his visitation rights under the previous custody order. The court found otherwise. It found that Anthony had reasonably exercised his visitation with the child in light of Anthony's military service, travel restrictions caused by the COVID-19 pandemic, and his inability to travel due to a serious motorcycle accident and a separate workplace injury. The superior court made these findings based on Anthony's testimony, which the court deemed credible. "The trial court's factual findings enjoy particular deference when they are based 'primarily on oral testimony, because the trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence.' "[10] Therefore, we see no clear error in the court's finding that Anthony reasonably exercised his visitation. Nor do we see any abuse of discretion in the court's finding that a substantial change of circumstances had occurred that justified a modification of custody.

### 2. Rena's challenge to the superior court's ruling on opinion testimony by the child's counselor is waived.

Rena sought to have the child's counselor testify about the counseling she provided the child, the child's behavior during these sessions, and her opinion on, as Rena's attorney put it, "what is best for [the child] in terms of remaining in [Alaska], [or] having a lengthy visit away from home." The superior court allowed the child's counselor to offer opinion testimony about her counseling and the behavior she had

---

[10] *William P. v. Taunya P.*, 258 P.3d 812, 814 (Alaska 2011) (quoting *Misyura v. Misyura*, 242 P.3d 1037, 1039 (Alaska 2010)).

observed, but precluded her from opining on what travel or custody arrangement would be in the child's best interests. The court explained that it "did not qualify [the counselor] as an expert for the purposes of offering opinions about the issues that the court must decide in this case." The court expressed concern that the counselor's testimony would become an attempt to express the child's preference "through the backdoor."

Rena challenges this ruling on appeal, but her argument is difficult to discern. She does not cite any case law in support of it. She seems to argue that the court ignored that the counselor was "essentially a treating physician testifying about her observation . . . and her treatment" of the child. But the court allowed the counselor to testify and offer opinions about her observation and treatment of the child. To the extent Rena means to argue something else, it is waived due to inadequate briefing.[11]

### 3. We see no error or abuse of discretion in the court's evaluation of the child's best interests.

Rena challenges the custody arrangement ordered by the superior court. Rena disagrees with several of the court's factual findings underlying its best interests determination and argues that the transition period the court adopted was too short. We review the court's factual findings for clear error and review the precise custody arrangement it adopted for abuse of discretion.[12]

First, Rena challenges the court's finding that the child's spring break travel to Mississippi to visit Anthony was a positive experience overall — a finding that

---

[11]     *A.H. v. W.P.*, 896 P.2d 240, 243 (Alaska 1995) ("[W]here a point is given only cursory statement in the argument portion of a brief, the point will not be considered on appeal." (alteration in original) (quoting *Adamson v. University of Alaska*, 819 P.2d 886, 889 n.3 (Alaska 1991))).

[12]     *Rainer*, 510 P.3d at 481 (assessing whether trial court's controlling findings of fact were clearly erroneous); *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (reviewing visitation order under abuse of discretion standard).

supported the court's decision to have the child spend summers at Anthony's home. Rena asserts the court minimized the testimony of Rena and her witnesses.

"The trial court, not this court, performs the function of judging the credibility of witnesses and weighing conflicting evidence."[13] The superior court acknowledged both the difficult moments and the positive aspects of the child's spring-break visit. The court recognized that the child had a hard time in the airport, was reluctant to pass through security, and broke down crying during the journey to Mississippi. The court also acknowledged Rena's testimony about the changes she perceived in the child's "clingy attachment" upon her return to Alaska. But the superior court noted that both Rena and her mother described the child as " 'buoyant,' suggesting that she is resilient and capable of transitioning between households in different states." And the court gave considerable weight to testimony from Rena's partner about the child's emotional state after her spring break trip to Mississippi. The superior court acknowledged Rena's partner's testimony about the child's relationship with his own daughter becoming "a little bit more confrontational" after her trip, as well as his assessment that this change could be the result of a seven-year-old and nine-year-old "coming into their own." And the court noted his testimony that the child was "still outgoing with her friends" and "still very fun-loving." Given this testimony, we see no clear error in the court's finding that the child's spring break visit was a positive experience overall.

Second, Rena argues that the court erred by not finding that Anthony restricted her phone access to the child during the spring break visit. Rena does not connect this criticism with a particular best interests factor the court was required to

---

[13]  *William P.*, 258 P.3d at 814 (quoting *Misyura*, 242 P.3d at 1039).

consider, but it seems to fit most squarely with the court's duty to consider each parent's willingness to facilitate the child's relationship with the other parent.[14]

We see no clear error in the court's finding on this factor. The spring break visit was a short trip, and while some of Rena's calls went unanswered, she still had a couple of calls with the child during her week-long visit to Mississippi. The missed connections that Rena describes do not convince us that the judge clearly erred in finding that each parent was equally willing to facilitate the child's relationship with the other parent.

Third, Rena argues the court erred by finding that the child was well bonded to Anthony. We see no clear error here either. The child spent week-long periods with Anthony in Alaska in April and October of 2023 and visited Anthony in Mississippi during spring break in 2024. And they had video visitation about once a week between in-person visits. Anthony's fiancée also testified that during the spring break visit the child was sad about the possibility of not returning for another visit. Given this evidence, we are not firmly convinced that the superior court clearly erred in finding that the child was bonded with Anthony, which supported the court's overall ruling that increased visitation was in the child's best interests.

Finally, Rena argues that the court erred by not phasing in Anthony's summer visitation more gradually. The court ordered four weeks of visitation in 2024 and 6 weeks in 2025 before transitioning to a full summer in 2026. This transition period seems reasonable on its face, and Rena fails to convincingly explain why it is not. Therefore, we see no clear error or abuse of discretion in the court's ruling.

**B.     Rena's Argument About The Order's Requirement To Use In-Network Healthcare Providers Is Waived.**

The superior court ruled that "the parties shall only use in-network healthcare provider[s]," and "[i]f an in-network provider is not available for a specific

---

[14]     AS 25.24.150(c)(6).

medical issue, the parties shall negotiate in good faith to determine a suitable out-of-network provider and shall equally split the costs for that treatment." Rena argues that the superior court erred by ordering that all medical providers be in-network. She asserts that she was forced to change all of the child's providers — her dentist, pediatrician, and therapist — after the ruling because Anthony would not agree to continue working with out-of-network providers.

This argument is waived due to inadequate briefing. "[S]uperficial briefing and failing to cite any authority constitute abandonment of a point on appeal."[15] Rena does not cite any case law or other authorities explaining why the court erred in approving this provision, which on its face is a reasonable approach to controlling the cost of medical care. Moreover, Rena's assertions about having to change the child's therapist and pediatrician were never made to the superior court.[16] Because of the failure to fully preserve and adequately brief this issue, we deem it waived.

## IV. CONCLUSION

The superior court's orders are AFFIRMED.

---

[15] *Wilkerson v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 993 P.2d 1018, 1021 (Alaska 1999).

[16] Rena points out that Anthony first proposed a restriction on out-of-network medical providers after closing arguments. When the court adopted Anthony's proposal, Rena filed a motion for reconsideration. But she mentioned the need to change the child's dentist only. Rena's comment about the dentist did not preserve an argument on appeal about changing several providers.