NOTICE

*Memorandum decisions of this court do not create legal precedent.  A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| RASHAE J.,<br><br>    Appellant,<br><br> v.<br><br>JAMES J.,<br><br>    Appellee. | )<br>) Supreme Court No. S-19110<br>)<br>) Superior Court No. 3AN-21-08619 CI<br>)<br>) <u>MEMORANDUM OPINION</u><br>)   <u>AND JUDGMENT</u>*<br>)<br>) No. 2142 – April 15, 2026<br>) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Una Gandbhir, Judge.

Appearances:  Rashae J., pro se, Chugiak, Appellant. James J., pro se, Eagle River, Appellee.

Before:  Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

## I. INTRODUCTION

A superior court modified a child custody arrangement, determining that the parents' ongoing acrimonious relationship constituted a substantial change in circumstances and that modification would serve the best interests of the children.  The children's mother appeals, arguing that the court abused its discretion in determining that there had been a change of circumstances and in modifying custody.  We conclude that the court failed to make sufficient findings to support its decision that there had

---

\*  Entered under Alaska Appellate Rule 214.

been a substantial change in circumstances warranting modification of the parents' custody plan. We therefore vacate the order modifying custody and remand the matter to the superior court.

## II. FACTS AND PROCEEDINGS

### A. Original Custody Agreement

This is the second time that Rashae and James J. are before us.[1] James and Rashae married in April 2005 and have six children, who were ages 9 through 17 at the time of the hearing underlying this appeal.[2] James moved out of the marital home in May 2019 and filed for divorce in November 2021.[3] During the parties' initial divorce trial, each testified regarding domestic violence allegedly committed by the other.[4] The court found that the evidence was insufficient to apply the domestic violence presumption because it was unable to determine who had been the aggressor in the context of the alleged incidents.[5] However, the court explained that the alleged incidents demonstrated "mutual distrust, anger, [and] ongoing arguments" and found that "both parties [had] anger issues."

The court issued a custody decision on the record in November 2022, ordering that the parties would have joint legal custody of the children and that Rashae would have primary physical custody.[6] The court ordered that during the school year, James would have visitation every other weekend from Friday afternoon until Sunday evening. During the summer, the parents would alternate weeks, with the option to

---

[1] *James J. v. Rashae J.*, Nos. S-18630/18670, 2024 WL 4372213 (Alaska Oct. 2, 2024). Initials are used in lieu of the parties' last name to protect their privacy.

[2] *Id.* at *1.

[3] *Id.*

[4] *Id.* at *2.

[5] *Id.*

[6] *Id.*

extend visitation by a week to accommodate vacation travel. The court ordered that Rashae and James could agree to other arrangements, but that the court's schedule would be the default in the absence of other agreements. The court also ordered the parents to communicate civilly — they were not to say negative things about one another in front of the children or let other people do so.

**B.      Motion To Modify Custody And Hearing**

In August 2023 James filed an emergency petition for a domestic violence protective order (DVPO) against Rashae. He named himself and the six children as petitioners and claimed that Rashae had committed custodial interference[7] by failing to return the children to him when she was supposed to. A magistrate judge denied James's request for a short-term order, but scheduled a long-term DVPO hearing before the superior court judge assigned to the parties' custody case. James thereafter filed a motion to modify custody due to Rashae's "intervening acts of domestic violence."

The court ultimately denied James's request for a long-term DVPO and held a separate hearing to resolve James's motion to modify custody. Both parties testified during the hearing. Rashae testified regarding her understanding of the parties' current custody order. She explained that she understood the order to say that the three younger children would visit James on the specified schedule, but that the three older children could choose when to spend time with their father. She also expressed that she did not appreciate James leaving their children at his partner's house when he would not also be there with them. Rashae ultimately argued that there had been no change in circumstance that warranted modifying custody, and that some of the difficulties between the parties stemmed from confusion about the custody schedule that arose because of James's work travel. In response to a question from the court about whether it should order a right of first refusal for each parent when the other parent was unable

---

[7]      AS 11.41.330.

to exercise custodial time,[8] Rashae's attorney explained that he and Rashae had not yet considered the right of first refusal or how that would work.

James testified that he knew that Rashae had spoken poorly of him in front of their children. He also testified that sometimes Rashae would show up unannounced to take the children when they were supposed to be in his custody. James argued that Rashae intentionally alienated the children from him. He asked for the court to apply the domestic violence presumption[9] due to Rashae's "continuing victimization" of him.

## C.    Decision On The Record

After hearing from the parties, the court made its decision on the record. It explained that when considering a motion to modify a custody arrangement, it first had to address whether there had been a significant change in circumstances. The court found that there had not been a change, such as a move by one of the parties, that would significantly affect the initial arrangement ordered by the court.

However, the court explained that "if things are not good and continue to remain [not] good, there is case law that supports the idea that the court can find that that is enough of an issue that impacts the children for custody to be revised." The court determined "that is what [was] happening" here, where "the children [were] hearing things, [were] being recorded, [and were] being sort of yanked back and forth." Concluding that this amounted to a substantial change in circumstances, the court moved on to consider the best interests of the children and ultimately ordered that the parties' custody arrangement should be clarified and modified.

In announcing its new custody order, the court first explained that it would treat the three older children and the three younger children distinctly, given the relative

---

[8]    In this case, the right of first refusal means that if one parent could not exercise their custody time, the other parent would have the opportunity to take the children before a third party (such as one of the parents' partners) watched the children.

[9]    AS 25.24.150(g).

independence of the older children. The court ordered that the schedule for the older children would remain the same, that the receiving parent would be responsible for arranging their custody time with those children, and that the other parent would not hinder custodial handoffs in any way. For the three younger children, the court ordered that James and Rashae would alternate weekends, and James would also have custody during the third week of each month.[10] During the summer, the custody arrangement would remain the same, with the parents alternating weeks with the younger children while the older children could "do as they please."

The court explained that it was modifying the school-year schedule for the three younger children in order "to give the children an opportunity to have regular time with dad to include homework, activities," and the regular parenting tasks that Rashae was "juggl[ing]." It also ordered that if a parent would be away for more than two custodial nights, the other parent would have the right of first refusal to be with the children before they were left in the care of a third party. The court emphasized that its order modifying custody was meant to "minimize the contact" between the parents, "maximize the quality time" that each parent spent with their children, and "make that time as normal and non-disruptive for the children as possible." It emphasized that the parties were to follow the order without deviating from it because the children "really need[ed] . . . stability and finality and consistency."

Rashae filed a motion for reconsideration, arguing again that there had been no substantial change in the circumstances to warrant a modification to the custody arrangement. James opposed the motion, and the court denied the motion without explanation.

---

[10] The court described its physical custody order within a 28-day cycle, with James having custody of the three younger children every other weekend and every third week within the 28-days cycle, amounting to "two nights with dad, 12 nights with mom, then seven nights with dad, and seven nights with mom . . . ."

This appeal followed.

## III. STANDARD OF REVIEW

Superior courts are afforded significant discretion when deciding disputes over child custody.[11] "The court's broad discretion extends to its determination whether, following an evidentiary hearing, the moving party has proven a substantial change in circumstances, meaning one that affects the child's welfare."[12] An abuse of discretion exists "if the [superior] court considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[13] Whether the superior court has made "sufficient findings for informed appellate review is a question of law."[14]

## IV. DISCUSSION

Rashae's primary argument on appeal is that the superior court abused its discretion in determining that there had been a substantial change of circumstances warranting modification of the court's initial physical custody order. Courts must evaluate a motion to modify custody in two steps: first, the movant must show that a change in circumstances justifies the modification, and second, the movant must show that the proposed modification is in the child's best interests.[15]

---

[11]     *Mengisteab v. Oates*, 425 P.3d 80, 85 (Alaska 2018) (quoting *Stephanie W. v. Maxwell V.*, 274 P.3d 1185, 1189 (Alaska 2012)).

[12]     *Rainer v. Poole*, 510 P.3d 476, 481 (Alaska 2022) (quoting *Collier v. Harris*, 377 P.3d 15, 20 (Alaska 2016)).

[13]     *Mengisteab*, 425 P.3d at 85 (quoting *Stephanie W.*, 274 P.3d at 1189).

[14]     *Rainer*, 510 P.3d at 481 (quoting *Horne v. Touhakis*, 356 P.3d 280, 282 (Alaska 2015)).

[15]     *McLane v. Paul*, 189 P.3d 1039, 1043 (Alaska 2008); *see also* AS 25.20.110(a).

The burden is on the parent requesting modification, and "[t]he key inquiry [at the first step] is whether the change [in circumstances] is significant enough to warrant the disruption inherent in changing a child's custody schedule or routine."[16] The change "must be demonstrated relative to the facts and circumstances that existed at the time of the prior custody order that the party seeks to modify."[17] "A change in circumstances is unlikely to be substantial enough to overcome our deep reluctance to shuttle children back and forth between parents unless the change affects the children's welfare and reflects more than mere passage of time."[18]

As an initial matter, we note that the superior court here did not change the custody arrangement as it applied to the three older children. Therefore, the controversy in this matter pertains only to the court's order as to the three younger children.

Rashae argues that the parties' circumstances underlying James's motion to modify custody were practically the same as they had been at the time of the initial custody order, and citing our decision in *Rainer v. Poole*,[19] argues that the court lacked a sufficient basis upon which to modify custody. James counters that the court's decision to modify the custody arrangement was grounded in Rashae's behavior, particularly her continued defiance of court orders.

Rashae is correct in pointing out our analysis in *Rainer*. There we said that a substantial change in circumstances must generally be determined by comparing the parties' current circumstances to the circumstances at the time of the court's most

---

[16]     *Collier v. Harris*, 261 P.3d 397, 407 (Alaska 2011).

[17]     *Jenkins v. Handel*, 10 P.3d 586, 589 (Alaska 2000).

[18]     *Hope P. v. Flynn G.*, 355 P.3d 559, 565 (Alaska 2015) (quoting *C.R.B. v. C.C.*, 959 P.2d 375, 381 (Alaska 1998) (internal quotations omitted), *overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078, 1085 (Alaska 2004)).

[19]     510 P.3d at 481-82.

recent custody order.[20] We explained that "[i]f current circumstances are similar to those at the time of the most recent custody order, no substantial change has occurred and the court must decline the modification request."[21] Similarly, in *Peterson v. Swarthout*, we affirmed a superior court's decision to deny a motion to modify custody because the parents' inability to communicate had already been considered by the court, was factored into its previous custody order, and did not amount to a change in circumstances.[22]

We have considered situations, such as in *Long v. Long*,[23] where ongoing hostilities do lead to a substantial change in circumstances when they coincide with other changes in the parents' lives.[24] There, we reasoned that "[t]he effect of hostility between the parents . . . may combine with other significant changes . . . to amount, in the aggregate, to a substantial change sufficient to warrant change of custody."[25]

But we have been careful to distinguish such cases from the situation in which a parent's motion to modify custody is based upon hostilities between the parents that have essentially continued unchanged from the time of the previous custody order until the modification motion. Indeed, in *Rainer* we vacated a superior court's modification of custody based on problematic behavior between parents because the court's findings did "not indicate whether these facts represent[ed] a change in circumstances, whether the communication issues resulting in missed visits [were]

---

[20]   *Id.*

[21]   *Id.* at 482.

[22]   214 P.3d 332, 340-41 (Alaska 2009).

[23]   816 P.2d 145 (Alaska 1991).

[24]   *Id.* at 152.

[25]   *Id.*

continuous or egregious enough to warrant modification, and whether a lesser sanction would suffice to ensure compliance with the existing custody order."[26]

Here, as in *Rainer*, the court's findings do not reflect obvious changes in the difficulties between the parties from the time of the court's initial custody order through the time of James's modification motion. And here, as in *Rainer*, the court's findings regarding changed circumstances failed to answer certain questions about whether the parents' ongoing difficulties amounted to a substantial change in circumstances. The court generally alluded to precedent supporting modification where conflict between the parents represented "enough of an issue that impact[ed] the children." It implied that it was choosing to modify custody because the parents' relationship and communication had not improved with the finality of having the court's initial custody order. And indeed, the court recognized that the circumstances between Rashae and James at the time of modification were similar to the circumstances at the time of the initial custody order.[27]

It is possible that the court's finding of a substantial change in circumstances was premised on an unanticipated inability or unwillingness of the parties to follow the terms of the initial custody order and significant impacts to the children that could not be ameliorated without modifying custody. But it is also possible that the change in circumstances found by the court did not include any change in the parties' behavior or its impact on the children, but instead reflected a change in the court's perspective about what would be most effective to meet the best interests of

---

[26]  *Rainer*, 510 P.3d at 484.

[27]  During the initial custody trial, the same court found that the parties engaged in "mutual distrust, anger, [and] ongoing arguments" and that "both parties [had] anger issues." And in deciding to modify the custody arrangement, the court acknowledged that the parents "continue to . . . have a dysfunctional, toxic relationship."

the children. Such a change in perspective, on its own, does not constitute a substantial change in circumstances sufficient to modify custody.

Without additional findings from the court, we cannot tell whether the court found that the hostility between Rashae and James resulted in circumstances severe or egregious enough to warrant custody modification.[28] Nor did the court seem to consider whether a lesser sanction than modification could "ensure compliance with the arrangement that the court [had] already determined [was] in the [children's] best interests."[29]

Had the court made only smaller adjustments to the pre-existing custody arrangement, akin to changing the timing of visitation or adding the right of first refusal, such adjustments would likely not require a finding of a *substantial* change in circumstances.[30] But particularly where the court's decision transitioned the parties from a custody arrangement in which Rashae had primary physical custody of the children to one in which Rashae and James shared physical custody, that modification required the finding of a substantial change in circumstances.

In the context of ongoing or continued hostility between the parties, the court needed to analyze whether that hostility had led to interference or noncompliance significant enough to amount to a substantial change in circumstances.[31] And the court needed to determine whether a lesser sanction than custody modification would have

---

[28] *See Rainer*, 510 P.3d at 484 (noting superior court had not made findings regarding whether missed visitation due to ongoing difficulties was "continuous, repetitious, or egregious" enough to warrant modification).

[29] *Id.*

[30] *See Morino v. Swayman*, 970 P.2d 426, 428 (Alaska 1999) ("The parent moving for modification has the burden of proving a *substantial* change in circumstances as a threshold matter . . . . The change in circumstances required to modify visitation . . . is not as great as that required for a change in custody." (emphasis added)).

[31] *See Rainer*, 510 P.3d at 482-83.

remedied the interference or noncompliance.[32]  While we recognize that the court here was trying to help the parents reach an arrangement that would reduce the tension between them, it failed to make findings sufficient to support a substantial change in circumstances warranting modification of custody of the three younger children.[33]

## V.  CONCLUSION

For the reasons stated above, we VACATE and REMAND the court's order modifying custody.

---

[32]  *Id.* at 483-84.

[33]  We leave to the superior court's discretion the question of whether it requires further evidence in order to make additional findings or whether it is able to rely upon the record already developed.  Because we are vacating and remanding the court's order, we need not address Rashae's other arguments.